UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| CHERRI L. TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | ) | No. 4:25-CV-00015-DCLC-CHS |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Cherri L. Taylor brought this action under 42 U.S.C. §§ 405(g) and 1383(c), seeking judicial review of the Commissioner of Social Security's final decision denying her application for disability insurance benefits and supplemental security income. Chief United States Magistrate Judge Christopher H. Steger prepared and filed a Report and Recommendation [Doc. 22], in which he recommends the Court affirm the Commissioner's decision. Ms. Taylor has timely objected to the report and recommendation, [Pl.'s Obj., Doc. 23], and in response, the Commissioner has filed a notice of intent to "rest[] on his case and rel[y] on his previously filed brief." [Comm'r's Notice of Intent, Doc. 24, at 1]. For the reasons below, the Court will **OVERRULE** Ms. Taylor's objection.

## I. Background

Ms. Taylor does not object to Chief Magistrate Judge Steger's summary of the case's factual background, the evidence, the administrative proceedings, or the administrative law judge's ("ALJ") findings. *See Thomas v. Arn*, 474 U.S. 140, 149-50 (1985) (finding the court may adopt unobjected to portions of the report and recommendation). The Court therefore adopts

these portions of Chief Magistrate Judge Steger's report and recommendation as if fully set forth herein, and the Court will only briefly recapitulate this case's pertinent facts.

Ms. Taylor alleged she was disabled within the meaning of the Social Security Act, 42 U.S.C. § 301 *et seq.*, since January 1, 2017. [Admin. Rec., Doc. 7, at 835]. She filed an application for a period of disability and disability insurance benefits and an application for supplemental security income on February 27, 2018. [Admin. Rec., Doc. 7, pg. 850]. Although she has a history of health problems, the ALJ described her "primary impairment" as medullary sponge kidney disease, [*id.* at 867], which causes her to develop urinary tract infections and kidney stones, [*id.* at 863, 868].[1] The ALJ recognized that Ms. Taylor has suffered from medullary sponge kidney disease since January 1, 2017. [*Id.* at 863]. Recounting the effects of this disease, Ms. Taylor testified that she "always ha[s] a UTI," [*id.* at 961], goes to the restroom to urinate "every fifteen minutes," [*id.* at 967], and urinates "at least 30" times a day, [*id.* at 929]. While the ALJ acknowledged that "the objective record shows she does get urinary tract infections," he found that "the frequency and type of treatment is not documented by the record." [*Id.* at 1038].

The ALJ also found that the severity of her disease and the extent of its alleged effects on her "are not fully supported" by the objective medical evidence. [*Id.* at 867]. To back this finding, he cited evidence that Ms. Taylor visited the emergency room, on average, fewer than twice a year for treatment of urinary tract infections, that her prescription medication, Urocit, was effective in treating her medullary sponge kidney disease, that she went without treatment from a nephrologist for lengths of time, and that she did not seek treatment from a urologist despite her nephrologist's recommendation to do so. [*Id.* at 868–69]. In short, he found her testimony not to be credible because it conflicted with other substantial evidence.

---

[1] Pincites refer to electronic page numbers (Page ID numbers) in the record.

Nor did the ALJ find the opinion of her treating physician, Jimmie Woodlee, M.D., to be credible. [*Id.* at 870]. Dr. Woodlee submitted two medical source statements in support of Ms. Taylor's application for social security benefits—one in 2018 and one in 2024. In the 2018 statement, he wrote that Ms. Taylor goes to the restroom an average of twenty-four times a day, "with such frequency that it would not be possible to fit the need to void into normal breaks in a work day." [*Id.* at 721]. In the 2024 statement, he wrote that Ms. Taylor goes to the restroom an average of thirty times a day, "with such frequency that it would not be possible to fit the need to void into normal breaks in a work day." [Admin. Rec., Doc. 7-3, at 1768]. The ALJ found Dr. Woodlee's medical source statements to be "unpersuasive" because no other objective medical evidence "support[s]" a need for Ms. Taylor to take "excess of 24 restroom breaks per day." [Admin. Rec., Doc. 7, at 870]. The ALJ therefore apportioned no "specific evidentiary weight, including [no] controlling weight," to Dr. Woodlee's medical source statements. [*Id.* at 869].

In the end, the ALJ issued a "partially favorable decision" for Ms. Taylor, [Pl.'s App. Br., Doc. 13, at 1926], concluding that Ms. Taylor "was not disabled prior to April 19, 2024, but became disabled on that date and has continued to be disabled through the date of [t]his decision." [Admin. Rec., Doc. 7, at 859]. Chief Magistrate Judge Steger agreed with the ALJ's decision. He stated that the ALJ "sufficiently analyzed the dissonance between Plaintiff's subjective allegations of pain and the objective medical evidence" and noted that he is without the authority to "reweigh[] the evidence" on appeal. [R. & R., Doc. 22, at 7]. He recommends this Court affirm the ALJ's decision.

## II. Legal Standard

When reviewing a magistrate judge's recommendation on a dispositive issue, the Court conducts a de novo review of that recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). In conducting a de novo review, the Court determines—as did Chief Magistrate Judge Steger—whether the ALJ's decision was supported by substantial evidence. *See* 42 U.S.C. § 405(g).[2] The Court "give[s] fresh consideration" to the issues before it, and it reaches "the ultimate determination of the matter" through the exercise of its own judicial discretion. *United States v. Raddatz*, 447 U.S. 667, 675–76 (1980) (quotation omitted). After its review, it "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## III. Analysis

Ms. Taylor raises a single objection to Chief Magistrate Judge Steger's report and recommendation: "The Magistrate erred in finding that the ALJ properly considered evaluated [sic] Plaintiff's subjective complaints of urinary frequency and urgency." [Pl.'s Obj., Doc. 23, at 1]. In her view, "neither the ALJ, nor the Magistrate, has given [her] subjective complaints as to frequency and urgency a fair assessment." [*Id.* at 2]. Substantial evidence supports the ALJ's evaluation of Ms. Taylor's complaints, and the ALJ applied the correct legal standard in reaching his conclusion.

The regulations govern how an ALJ evaluates a claimant's statements about her symptoms. A claimant's statement about her symptoms is not alone conclusive evidence of disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(a). The inquiry has two questions. SSR

[2] "Substantial evidence means 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004) (quotation omitted).

16-3p.[3] At the first step, the ALJ asks whether medical signs and laboratory findings show a medically determinable impairment that could reasonably be expected to produce the symptoms the claimant alleges. 20 C.F.R. § 404.1529(b). If they do, the ALJ turns to the second step and evaluates the intensity and persistence of those symptoms to determine the extent to which they limit the claimant's capacity for work. *Id.* § 404.1529(c)(1). At that step the ALJ considers all of the available evidence from medical and nonmedical sources, including the medical opinions in the record. *Id.*; *see id.* § 404.1520c. The ALJ may not discount the claimant's statements about the intensity and persistence of her symptoms solely because the objective medical evidence does not substantiate them. *Id.* § 404.1529(c)(2). The ALJ must instead weigh the other evidence bearing on the symptoms alleged, including the claimant's daily activities, the location, duration, frequency, and intensity of the symptoms, the type, dosage, and effectiveness of any medication, and the treatment the claimant has received. *Id.* § 404.1529(c)(3). The question is whether the claimant's statements are consistent with the objective medical evidence and the other evidence in the record. *Id.* § 404.1529(a); SSR 16-3p.

The parties do not dispute the first step. The ALJ found that Ms. Taylor has suffered from medullary sponge kidney disease since January 1, 2017, [Admin. Rec., Doc. 7, at 863], and the disease could reasonably be expected to produce the urinary frequency she describes. The dispute concerns the second step. The ALJ credited some of the objective evidence, acknowledging that "the objective record shows she does get urinary tract infections." [Admin. Rec., Doc. 7, at 1038]. He then turned to the other information relevant to the symptoms she alleged. He noted that Ms. Taylor visited the emergency room, on average, fewer than twice a year for treatment of urinary

[3] The Sixth Circuit has long applied a two-step framework of its own to subjective complaints of pain. *See Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). *Duncan* predates both the current version of the regulation and SSR 16-3p, and its second step addresses allegations of pain rather than symptoms generally. The Court therefore applies the framework the regulations supply. The result would be the same under *Duncan*.

tract infections. Her prescription medication, Urocit, was effective in treating her medullary sponge kidney disease. She went without treatment from a nephrologist for stretches at a time. And she did not seek treatment from a urologist despite her nephrologist's recommendation that she do so. [*Id*. at 868–69]. Each of these facts addresses the frequency of her symptoms and treatment she pursued to relieve them. Together they supply substantial evidence for the ALJ's finding that the alleged severity of her condition is "not fully supported" by the record as a whole. [*Id*. at 867].

The same conclusion follows for the ALJ's assessment of Dr. Woodlee's opinion. For claims filed on or after March 27, 2017, the ALJ does not defer to any medical opinion or give it any specific evidentiary weight, including controlling weight to the claimant's medical sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ evaluates the persuasiveness of the opinion instead, and the two most important considerations are "supportability" and "consistency." *Id*. §§ 404.1520c(b)(2), (c)(1)–(2). The ALJ need only provide a sufficient basis to allow this Court to follow his reasoning in the decision. *See Stacey v. Comm'r of Soc. Sec*., 451 F. App'x 517, 519 (6th Cir. 2011).

The ALJ found that neither supportability nor consistency supported Dr. Woodlee's opinion. With regard to supportability "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[]. . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). On the issue of supportability, Dr. Woodlee used his own treatment notes as the basis for his opinion that Ms. Taylor urinates thirty times a day. [Admin. Rec., Doc. 7-3, at 1769]. But those notes were based only on Ms. Taylor's own account of her increased urinary frequency, [Admin. Rec., Doc. 7, at 502, 689, 849; Admin. Rec., Doc. 7-3, at 1775, 1776, 1784, 1785, 1862], and on more than a dozen occasions he recorded that she reported no increased urinary frequency at all, [Admin. Rec.,

Doc. 7, at 122, 125, 129, 498, 506, 510, 513, 539, 542, 685, 746, 750, 846]. Nowhere do the notes state how many times a day Ms. Taylor urinates. The ALJ reasonably found Dr. Woodlee's opinion not supported.

For consistency, "[t]he more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[ ] . . . will be." 20 C.F.R. § 404.1520c(c)(2). On consistency, the rest of the record regarding her infrequent emergency room visits, the effectiveness of the medication she takes, her sporadic visits seeking the care of a specialist, all are inconsistent with Dr. Woodlee's opinion. The ALJ again reasonably found that Dr. Woodlee's opinion was not consistent with the other medical and nonmedical sources. Thus, this Court finds the ALJ had ample ground to find Dr. Woodlee's opinion "unpersuasive." [*Id*. at 870].

Even if the ALJ had fully credited her testimony, the Court, based on the record, must defer to the ALJ's finding that the medical evidence contradicted it. *See* [R. & R. at 8 ("The ALJ reasonably concluded that Plaintiff's subjective allegations and testimony were contradicted by the medical evidence in the record.")]. The ALJ operates as the "factfinder," *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 564 (6th Cir. 2022), meaning that he is "charged with developing the facts," *Richardson v. Perales*, 402 U.S. 389, 410 (1971), and as the factfinder, the ALJ had license not to believe Ms. Taylor's testimony if it conflicted with other substantial (and credible) evidence in the record, *see McCormick v. Sec'y of Health & Hum. Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988) (affirming denial of social security benefits when "[t]he ALJ rejected claimant's testimony with regard to the headaches because it was not supported by objective medical evidence, and he did not find claimant to be a credible witness").

This Court lacks authority to second-guess the ALJ's credibility determinations or to reweigh the evidence, *see Workman*, 105 F. App'x at 798 ("The court may not . . . resolve conflicts in evidence[] or decide questions of credibility." (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997))), and it gives "great weight and deference" to the ALJ's credibility determinations because the ALJ is "charged with the duty of observing a witness's demeanor and credibility," *id.* at 801 (citing *Walters*, 127 F.3d at 531). Because the ALJ fully explained why Ms. Taylor lacked credibility as a witness and how her testimony conflicted with other substantial evidence in the record, [Admin. Rec., Doc. 7, at 868–869], the Court cannot disturb his credibility determination, *see Workman*, 105 F. App'x at 801 (declining to disturb the ALJ's finding that the claimant lacked credibility when the claimant's testimony was "directly refuted" by other substantial evidence in the record); *see also id.* at 798 (stating that "a review of the Commissioner's decision is limited to determining whether the findings are supported by substantial evidence and whether the correct legal standards were applied" (citing 42 U.S.C. § 405(g))).

## IV. Conclusion

Having carefully reviewed the record, the Court fully agrees with Chief Magistrate Judge Steger's recommendation, and the Court therefore **ACCEPTS IN WHOLE** the report and recommendation. For the reasons in the report and recommendation, which the Court adopts and incorporates into this Memorandum Opinion and Order, and for the reasons that the Court has identified under a de novo review, it is **ORDERED** that Ms. Taylor's objection [Doc. 23] is **OVERRULED**; Ms. Taylor's request for relief [Doc. 13] is **DENIED**; and the Commissioner's request for the affirmance of his final decision denying benefits before April 19, 2024 [Doc. 21] is **GRANTED**. The Court will enter a separate judgment order.

**SO ORDERED:**

s/Clifton L. Corker
United States District Judge